UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STARPAC PACKAGING
INDUSTRIES, LTD.,

    Plaintiff,

v.

SMITH GARDEN PRODUCTS,
INC., ROBERT A. GOODWYN, and
FELKER W. WARD, JR.,

    Defendants.

CIVIL ACTION NO.

1:04-CV-2047-MHS

## ORDER

Presently before the Court are plaintiff's motion for summary judgment and defendants' motion to amend answer. For the following reasons, the Court grants plaintiff's motion and denies defendants' motion.

Background

Plaintiff Starpac Packaging Industries Ltd. ("Starpac") manufactures and sells plastic bags used as containers for lawn and garden products. Defendant Smith Garden Products, Inc. ("Smith") purchases bags for the purpose of packaging its lawn and garden products. Starpac had sold Smith plastic bags for years prior to September 2002.

On September 3, 2002, Smith filed a petition in the United States Bankruptcy Court for the Northern District of Georgia, seeking relief under Chapter 11 of the United States Bankruptcy Code. On January 30, 2003, Judge Brizendine entered an "Order Confirming Second Amended and Restated Chapter 11 Plan of Reorganization, as Modified Herein" (hereinafter "Modified Plan"). Order, Exh. B to Compl.

In Article 4.03 of the Modified Plan, Starpac and Smith agreed to specific terms for Smith to purchase bags from Starpac. Article 4.03 also stated that Smith would not be required to purchase any items or amount from Starpac if Starpac failed to perform in accordance with the specifications of packaging items.

Article 4.03 further provided for a collective personal guaranty of $300,000 to be provided by defendants Robert A. Goodwyn and Felker W. Ward. Goodwyn and Ward subsequently entered into a "Guaranty Agreement"[1] in which they guaranteed the prompt payment of certain obligations of Smith to Starpac under the Modified Plan up to $150,000 each.

---

[1] Goodwyn and Ward each signed a guaranty agreement. The Court will collectively refer to both of these agreements as "Guaranty Agreement."

2

Smith submitted purchase order No. 7471-B dated March 14, 2003, to Starpac by which Smith ordered certain packaging from Starpac for a total of $346,027.50. Smith listed the date needed on this purchase order as "ASAP." Exh. E. to Compl. Smith then submitted purchase order No. 7471-A dated March 18, 2003, to Starpac by which Smith ordered more packaging from Starpac for a total of $334,715.75. Smith listed the date needed on this purchase order as "RUSH" and further provided delivery should be per the "B. Harris Schedule sent separately." Exh. F. to Compl.

By the time Starpac received these two purchase orders from Smith, it already had quantities of some of the packaging requested by Smith in its inventory. Starpac then had to produce additional quantities of some packaging that Smith ordered.

Starpac shipped to Smith and invoiced Smith for $448,411.75 of packaging. Smith paid Starpac $388,444.83 due on the invoices leaving an outstanding balance of $59,966.92. The invoices provided for the payment of interest at the rate of 1.5% per month on overdue accounts and specified that payments were due within thirty (30) days.

3

Starpac also still had $224,380.45 in inventory that it had produced per Smith's request in the purchase orders. Smith refused delivery of these materials. In December of 2004, Garick, Inc.[2] ("Garick") contacted Starpac for the purpose of purchasing some of the packaging that Starpac had manufactured for Smith pursuant to the purchase orders. With approval by defendants' counsel, Starpac sold and shipped certain of the packaging to Garick, and Garick paid Starpac $160,901.98 for this material.

On July 14, 2004, Starpac brought this suit against Smith, Goodwyn, and Ward alleging breach of contract and seeking money owed, plus interest, attorneys' fees, and expenses of litigation. Starpac alleges that defendants still owe $59,966.92 of the total balance of $448,411.75 for materials that Smith ordered via the purchase orders and that Starpac delivered. Starpac further alleges that it produced $224,380.45 worth of packaging material for Smith in response to the purchasing orders, Smith refused shipment of these materials, and Starpac then sold $160,901.98 of these materials to Garick. Starpac seeks from defendants the remaining balance of $63,478.47 for the material it produced in response to Smith's purchase orders and did not sell

---

[2] Garick, Inc. is the majority interest owner in Dr. Bramlett Raod, LLC, the successor in interest to Smith.

4

to Garick. Starpac seeks a total of $123,445.39 ($59,966.92 + $63,478.47) as well as interest and attorneys' fees from defendants.

Starpac now moves for summary judgment against defendants Goodwyn and Ward, and defendants move to amend the answer.

Discussion

A. Starpac's Motion for Summary Judgment

First, Starpac contends that its claims on the purchase orders are "obligations" as defined by the Guaranty Agreement because they are indebtedness and liabilities with respect to the supply agreement in Article 4.03. Therefore, pursuant to the Guaranty Agreement, Starpac alleges that Goodwyn and Ward are liable for these claims. Starpac argues that neither Article 4.03 nor the purchase orders set forth any delivery dates by which Starpac could have failed to perform, and there is no evidence that defendants sent Starpac a separate delivery schedule. Starpac also argues that the statements provided by defendants in affidavits do not set forth any delivery dates and are conclusory statements that have no probative value.

Second, Starpac contends that even if Smith did have a defense to Starpac's claims, Goodwyn and Ward waived any defense of Smith pursuant to the terms of the Guaranty Agreement. Third, Starpac asserts that Goodwyn and Ward cannot argue that any alleged damages suffered by Smith should be offset or recouped against any of Starpac's claims because Goodwyn and Ward agreed that their payments to Starpac would be made free and clear of any counterclaims. Finally, Starpac argues that Goodwyn and Ward are liable for Starpac's attorneys' fees pursuant to the Guaranty Agreement.

Goodwyn and Ward argue in response that Smith never entered into a separate supply agreement. They argue further that Starpac failed to perform in accordance with Article 4.03 because Starpac did not deliver the materials on time. Goodwyn and Ward contend that Smith is not liable for the rejected goods because Smith was within its rights to reject the goods when they were late. Because Starpac failed to perform in compliance with Article 4.03 by not providing the materials on time, Goodwyn and Ward argue that no obligation arose under the Guaranty Agreement, and because no obligation arose under the Guaranty Agreement, Goodwyn and Ward contend that whether they waived any defense is now irrelevant.

Goodwyn and Ward also aver that if for some reason Smith was not entitled to reject the materials, then Starpac failed to mitigate its damages. Goodwyn and Ward assert that Smith's damages may be offset or recouped against any indebtedness arising from the rejected product. Finally, Goodwyn and Ward argue that no interest is allowed on unliquidated damages.

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The movant bears the initial responsibility of asserting the basis for his motion. Celotex, 477 U.S. at 323; Apcoa, Inc. v. Fidelity National Bank, 906 F.2d 610, 611 (11th Cir. 1990). However, the movant is not required to

negate his opponent's claim. The movant may discharge his burden by merely "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." Id. at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is material when it is identified by the controlling substantive law as an essential element of the non-moving party's case. Anderson, 477 U.S. at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Id. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element material to that party's case so as to create a genuine issue for trial.

Viewing the evidence and all factual inferences in the light most favorable to defendants, Starpac and Smith were bound by the terms of the Modified Plan, including Article 4.03. Article 4.03 states that Smith was relieved from purchasing materials from Starpac if Starpac "(i) informs [Smith] that it cannot or will not perform according to specifications (including volume) with respect to such items, or (ii) Starpac materially fails to perform in accordance with the specification (including volume) with respect to such items." Exh. B to Compl. at "Article 4.03." Goodwyn and Ward argue that Starpac failed to perform in accordance with the specifications for the packaging materials because Starpac did not timely deliver the goods per the purchase orders or the separate delivery schedule.

Regarding Goodwyn and Ward's argument that they did not enter into a separate supply agreement, first the Court finds that the parties entered into a supply agreement under the Modified Plan because Article 4.03 states that the parties "hereby enter into a supply agreement . . . with the following terms," and the Modified Plan says nothing about a separate supply agreement. Id. Second, defendants do not rely on any separate supply agreement for their arguments but instead rely on the language of Article 4.03 and the purchase orders. Third, despite not entering into a separate supply agreement, defendants continued to do business with Starpac, submitted purchase orders for goods, and made a separate guaranty agreement as contemplated by the terms of Article 4.03.

Next, the supply agreement as provided in Article 4.03 does not provide any delivery dates. Defendants rely on the delivery times found in the purchase orders and a separate delivery schedule. Defendants have not produced any evidence of any delivery dates or deadlines to show that Starpac failed to abide by the delivery dates Smith requested. Although the two purchase orders at issue in this case stated that Smith needed the materials by either "RUSH" or "ASAP," defendants have produced no definite date of delivery for which Starpac could have been untimely. Richard Harris,

AO 72A
(Rev.8/82)

Chief Financial Officer of Smith at the time of the incidents in this case, provided an affidavit stating that a separate delivery schedule was sent. However, defendants have not produced this delivery schedule, any information about who may have sent the delivery schedule and when it was sent, or the dates set forth in the delivery schedule. In addition, even if a separate delivery schedule was sent, the delivery schedule only pertained to 7471-A and not 7471-B.

The Court concludes that Smith has failed to come forward with specific evidence to support its proposition that Starpac delivered the goods late. Therefore, no genuine issue for trial exists on the issue of Starpac's timely delivery. The Court further concludes that Starpac performed in accordance with Smith's specifications and the terms of the supply agreement in Article 4.03. Therefore, Smith was not within its rights to reject the materials and refuse shipment and payment for materials.

The Guaranty Agreement provided that Goodwyn and Ward were liable to Starpac for the prompt payment when due for all of the obligations which were then existing or would arise whether for principal, interest, fees, or other charges including reasonable attorneys' fees and expenses, which

Starpac incurred in collecting or otherwise enforcing performance of any of the obligations. The Guaranty Agreement defined obligations as any and all of Smith's indebtedness, liabilities, or obligations, along with any interest that may accrue, to Starpac which were in existence or would arise with respect to the supply agreement.

Smith's indebtedness on the purchase orders arose with respect to the supply agreement, and therefore an obligation arose under the Guaranty Agreement. Pursuant to the Guaranty Agreement, Goodwyn and Ward "irrevocably" guaranteed to Starpac the prompt payment when due. Exh. C to Compl. at ¶ 1.

The Guaranty Agreement also states that Goodwyn and Ward waived any defenses which Smith may have on any of the obligations. Thus, Goodwyn and Ward waived Smith's defense that Starpac failed to mitigate its damages.

Defendants asserted a counterclaim in their original answer stating that any damages Starpac seeks should be offset or recouped because Starpac did not properly credit defendants with adjustments. However, under the

Guaranty Agreement, Goodwyn and Ward agreed that "any and all payments would be made free and clear of and without deduction for any set-off, counterclaim, or withholdings." Id. at ¶ 1. Therefore, Goodwyn and Ward are not entitled to any offset or recoupment against the liabilities owed to Starpac under the Guaranty Agreement.

Defendants argue that Starpac is not entitled to pre-judgment interest because the damages Starpac seeks under the Guaranty Agreement are uncertain because they are subject to being offset or recouped. This argument is now moot because the Court has concluded that Goodwyn and Ward are not entitled to any offset or recoupment.

Finally, pursuant to the Guaranty Agreement, Goodwyn and Ward are liable for Starpac's reasonable attorneys' fees and expenses incurred by Starpac in collecting Smith's indebtedness.

Accordingly, the Court grants Starpac's motion for summary judgment. The Court enters judgment against each Goodwyn and Ward: 1) in the amount of $123,445.39; 2) interest at the rate of 1.5% on $332.94 beginning on June 16, 2003; 3) interest at the rate of 1.5% on $59,663.98 beginning on

November 15, 2003; and 4) reasonable attorneys' fees and expenses incurred by Starpac in collecting these amounts. The sum of these amounts may not exceed $150,000 each as to Goodwyn and Ward per the Guaranty Agreement.

B. Defendants' Motion to Amend Answer

Defendants, Smith, Goodwyn, and Ward, have filed a motion to amend the answer to add counterclaims for recoupment and/or offset of its damages against any alleged indebtedness due Starpac which arose from the failure of Starpac to timely deliver packaging products to Smith. Specifically, defendants allege that Smith sustained at least $500,000 in damages which arose from Starpac's failure to timely deliver the packaging products. Defendants also allege that Starpac shipped Smith $15,000 worth of packaging materials and billed them for this amount but that Smith did not order or use these materials. Smith argues that leave should be given to amend their answer because adding these amendments would not prejudice Starpac.

Starpac argues in response that defendants have acted with undue delay in bringing these counterclaims and that it will suffer undue prejudice

should the Court allow them because Starpac will have to conduct discovery on these issues.

"[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); Nolin v. Douglas County, 903 F.2d 1545, 1550 (11th Cir. 1990). In determining whether to grant leave to amend, a court may consider undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. Nolin, 903 F.2d at 1550 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Defendants argue that they now seek to amend the answer after reviewing discovery and preparing their response to Starpac's motion for summary judgment. The testimony on which defendants rely for their amended answer was discovered in June of 2005. Discovery closed in this case on October 10, 2005, and the deadline for filing summary judgment motions was October 31, 2005. Defendants did not file their motion to amend until December 12, 2005. Defendants have not provided an explanation as to why defendants waited until after discovery had closed and Starpac had

already filed its motion for summary judgment to then assert these defenses. The Court concludes that defendants have unduly delayed seeking leave to amend and that Starpac will suffer undue prejudice if the Court grants defendants' motion.

In addition, adding a counterclaim for recoupment due to Starpac's alleged failure to timely deliver materials to Smith is futile given the Court's conclusion that Starpac did not deliver the materials untimely. A counterclaim by Goodwyn and Ward would also be futile given that the binding Guaranty Agreement provides that any and all payments to Starpac would be made free and clear of any counterclaim. Accordingly, the Court denies defendants' motion to amend answer.

Conclusion

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment against defendants Goodwyn and Ward [#21]; DENIES defendants' motion to amend answer [#28]; and GRANTS plaintiff's motion to replace statement of material facts [#36].

IT IS SO ORDERED, this 9th day of May, 2006.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

AO 72A (Rev.8/82)